626 F.Supp. 837 (1985)
NATIONAL ADVERTISING COMPANY, Plaintiff,
v.
CITY OF BRIDGETON, Defendant.
No. 84-2089C(3).
United States District Court, E.D. Missouri, E.D.
December 30, 1985.
Patrick C. Dowd, Coburn, Croft & Putzell, St. Louis, Mo., for plaintiff.
William A. Richter and W. Mark Rasmussen, Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, Mo., for defendant.

*838 MEMORANDUM OPINION
HUNGATE, District Judge.
"I love a billboard, I always will
Because a billboard gives me such a thrill.
When I was only a little child
A circus billboard drove me wild."
The Billboard March, by John N. Klohr.
Apparently, billboards have likewise attracted the attention of the Bridgeton City Council. This suit follows defendant's denial, pursuant to its ordinance prohibition against "billboards," of plaintiff's applications for building permits to erect outdoor advertising structures on leased property.
The relevant Bridgeton ordinances allow some exceptions, perhaps in the interest of due process rights of land owners to erect signs on their own property relating to the business or profession carried on there. They further permit, perhaps in the interest of the first amendment, for temporary periods relating to elections, signs denoting issues or candidates supported or opposed; no bias or preference is dictated by the ordinance.
Can a city, in the interest of aesthetics, restrict off-site signs erected for profit? Or signs calling attention to a business or profession not conducted or service or product not available on the premises on which the sign is located?
The Court's consideration of the difficult questions presented here was aided by outstanding presentations made by counsel on both sides.

Findings of Fact
1. Plaintiff is a corporation organized and existing under the laws of the State of Delaware and qualified to transact business as a foreign corporation in the State of Missouri.
2. Plaintiff is engaged in the business of outdoor advertising throughout the United States, including the metropolitan St. Louis area.
3. Defendant is a "Constitutional Charter City" under Article 6, Section 19 of the Constitution of the State of Missouri of 1945, as amended.
4. The powers of the defendant are derived from Article 6, Section 19(a) of the Constitution of the State of Missouri of 1945, as amended.
5. As a part of its outdoor advertising business, plaintiff (a) leases real estate; (b) erects and maintains outdoor advertising signs on the real estate it leases; and (c) leases space on its signs to persons or entities to display advertising on the signs. The advertising messages displayed on plaintiff's signs include non-commercial and commercial speech. The speech advertised is for lawful activities and is not misleading.
6. The non-commercial speech advertised on plaintiff's signs includes (a) services performed by charitable and civic organizations; (b) fund raising campaigns for charitable and civic organizations; (c) campaigns to fight crime, drug addiction, and drunken driving; (d) political messages by candidates for public offices; (e) messages on political issues; and (f) messages by religious organizations.
7. The commercial speech advertised on plaintiff's signs includes advertisements by (a) hotels and motels; (b) restaurants; (c) motorist services; (d) tourist attractions; (e) businesses selling products or services; (f) radio and television stations; and (g) financial institutions.
8. During 1984, plaintiff leased three parcels of real estate within the municipal boundaries of the City of Bridgeton and in areas zoned by the defendant for commercial or industrial purposes. The leased real estate is located within 600 feet of the nearest edge of the right-of-way of two interstate highways which are located within the municipal boundaries of the defendant, are a part of the interstate highway system in the State of Missouri, and are interstate highways for the purposes of Mo.Rev.Stat. § 226.500, et seq. (1978).
9. Plaintiff seeks to erect a 14' by 48' monopole outdoor advertising sign on each of the leased parcels of real estate for use *839 in plaintiff's outdoor advertising business. In June of 1984 plaintiff applied to defendant for permits to build an outdoor advertising structure on each of the leased properties.
10. At all times material to this action, Article VI of Chapter 5 of defendant's Municipal Code[1] and Ordinance No. 84-85 enacted by defendant on August 15, 1984,[2] prohibited off-site commercial and non-commercial advertising. Due to these prohibitions, the other provisions of old Article VI and of Ordinance No. 84-54 were not intended to apply to off-site outdoor advertising signs.
11. The provisions in old Article VI of Chapter 5 of defendant's Municipal Code and Ordinance No. 84-54 of defendant's Municipal Code which prohibit off-site outdoor advertising signs were enacted by defendant only for the purpose of maintaining and improving aesthetics within defendant's municipal boundaries. Aesthetics is a governmental interest which the defendant can advance if done properly.
12. Pursuant to defendant's ordinances, which declare unlawful signs advertising products, articles, or services not produced or available on the property on which the sign is located, defendant denied each of plaintiff's building permit applications. Plaintiff was unable to build outdoor advertising signs on the three premises it leased, and has not been able to realize the profits it would have realized had the signs been erected and maintained.
13. But for old Article VI of Chapter 5 of defendant's Municipal Code and Ordinance No. 84-54 of defendant's Municipal Code, plaintiff would be entitled to a sign permit and could erect and maintain the type of sign plaintiff desires to erect on each of the parcels of real estate leased by the plaintiff.

Conclusions of Law
1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b). The Court declines to exercise jurisdiction over the pendent state law preemption claim and therefore does not determine that claim. United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).
2. Do the Bridgeton ordinances at issue here constitute a prior restraint on free *840 speech? Yes, as to advertising a business or profession provided or a product not available on the premises where the sign is located.
Is this the sort of prior restraint on free speech forbidden by the first amendment to the United States Constitution? No.
 I think that I shall never see
 A billboard lovely as a tree
 Indeed, unless the billboards fall
 I'll never see a tree at all.
"Song of the Open Road," The Ogden Nash Pocket Book, 6 (1944).
Consider, what other avenues of expression are available to plaintiff in this case? The Official Manual of the State of Missouri for the years 1983 and 1984 indicates the St. Louis metropolitan area has more than fifteen newspapers, over twenty radio stations, and six television stations. This is not counting the rights to distribute handbills, operate soundtrucks, or conduct skywriting, all of which occur in the area.
We are not talking about a penniless person carrying a placard, seeking "Justice for Leonard Peltier," see United States v. Peltier, 731 F.2d 550 (8th Cir.1984) (per curiam); United States v. Peltier, 585 F.2d 314 (8th Cir.1978), cert. denied, 440 U.S. 945, 99 S.Ct. 1422, 59 L.Ed.2d 634 (1979), or decrying oppressive tax laws. Here we are considering those who can afford the expense of a billboard. So, even if the ordinance here were invalidated or repealed, a pauper could not employ this form of free speech.
3. To determine whether the governmental restrictions here are valid restrictions on commercial speech, the Court must decide whether the commercial speech "concerns lawful activity and is not misleading" and then whether the restrictions seek
to implement a substantial governmental interest, ... directly advance that interest and ... reach no farther than necessary to accomplish the given objective.
Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 507, 101 S.Ct. 2882, 2892, 69 L.Ed.2d 800 (1981), citing Central Hudson Gas & Electric Corp. v. Public Service Comm'n, 447 U.S. 557, 563-66, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). Here, it is undisputed that the speech advertised by plaintiff is lawful and is not misleading, and that the ordinances restrict that speech. Thus, the Court must consider the restrictions' validity.
4. Do the ordinances implement a substantial governmental interest? A substantial governmental interest in aesthetics has been recognized. See Metromedia, Inc., supra, 453 U.S. at 507-08, 101 S.Ct. at 2892-93; Members of City Council v. Taxpayers for Vincent, 466 U.S. 789, 806-07, 104 S.Ct. 2118, 2130, 80 L.Ed.2d 772, 789 (1984).
Concern about the proper balance between commercial and aesthetic values has long disturbed the public conscience.
I have ridden superhighways and believed the billboard's promises
* * * * * *
[O]n freeways fifty lanes wide on a concrete continent spaced with bland billboards illustrating imbecile illusions of happiness
Lawrence Ferlinghetti, A Coney Island of the Mind, 64, 9 (1958).
In the Highway Beautification Act of 1966, the federal government recognized the legitimacy of aesthetic interest in the regulation of outdoor signs at the national level:
The Congress hereby finds and declares that the erection and maintenance of outdoor advertising signs, displays, and devices in areas adjacent to the Interstate System and the primary system should be controlled in order to protect the public investment in such highways, to promote the safety and recreational value of public travel, and to preserve natural beauty.

23 U.S.C. § 131(a) (emphasis added).
The State of Missouri, in its Constitution, recognizes the legitimacy of aesthetic interest in the regulation of outdoor signs at state level:
The general assembly may enact laws and make appropriations to preserve and *841 perpetuate memorials of the history of the state by parks, buildings, monuments, statues, paintings, documents of historical value or by other means, and to preserve places of historic or archaeological interest or scenic beauty, and for such purposes private property or the use thereof may be acquired by gift, purchase, or eminent domain or be subjected to reasonable regulation or control.
Mo. Const. Art. III, § 48 (emphasis added).
The Missouri Constitution authorizes the state legislature to preserve scenic beauty. Missouri courts have long recognized and upheld the reasonable regulation of signs, including compensation and amortization to eliminate nonconforming signs.
Chapter 5, § 5.18, ¶¶ 1 and 3, at pages 5-24 and 5-25, Missouri Local Government Law, published by the Missouri Bar. See also Mo.Rev.Stat. § 226.500, et seq. (1978).
If beauty is in the eye of the beholder, who shall be the beauty operator? Is it the elected legislative body of local residents whose mandate must be regularly renewed by the electorate;  or an appointed (and sometimes non-resident) tribunal whose eyes may never gaze upon the economic blight, visual pollution, and aesthetic issues to which the ordinance is addressed.
 "The silverhaired busdriver starts up
 humming a tune from Naughty Marietta
 We hum past
 Tropicana Avenue Lone Palm Motel
 Shell Mobil Private Pool Suites Looney Tunes
 HEAVEN Funny Farm Rent-a-Car Solarcaine
 Paradise Road Blue Chip Stamps GOLF
 Ice LeCafe THE END Drugs HACIENDA
 Mormon Temple Towaway Zone Coppertone
 Gulf Silver Slipper Auto Refrigeration
 Progressive Jackpots Nevada Visitors Bureau
 Penny Slots & Free Drinks Las Vegas Boulevard
 Play Nickels Win New Car Hughes Air West
 Bonanza Casino Check Cashing Service
 FOLIES BERGERE "Never Before" Sage & Sand
 Hunt Breakfast HOOVER DAM
 `Old-Fashioned Hospitality'
 Frontier Hotel
 LAS VEGAS HILTON
 THE DUNES
 STARDUST
 Westward Ho
 SHOWBOAT
 FLAMINGO
 DESERT INN
 PYRAMIDS
 CAESAR'S PALACE
 Orange Julius
 Our Marriage Chapel
 Little Church of the West
 `Thirty Dollar Weddings'
 `Go Home Satisfied or Refund'
 Jesus Christ Superstar gets off"
Lawrence Ferlinghetti, "Las Vegas Tilt," Open Eye, Open Heart, 98-99 (1961).
"It is hostile to a democratic system to involve the judiciary in the politics of the people.... Courts ought not to enter this political thicket[,]" wrote Justice Felix Frankfurter in 1946. Colegrove v. Green, [328 U.S. 549, 553-54, 556, 66 S.Ct. 1198, 1200, 1201, 90 L.Ed. 1432 (1946)].
Congressional Quarterly, vol. 43, no. 39, p. 1940, Sept. 28, 1985.
Writing for the majority in Reynolds v. Sims, 377 U.S. 533, 562, 84 S.Ct. 1362, 1382, 12 L.Ed.2d 506 (1964), Chief Justice Warren explaining the reasoning behind one person, one vote, stated: "Legislators represent people, not trees or acres. Legislators are elected by voters, not farms or cities or economic interests." A fortiori legislators, not billboards, represent people.
As a general principle, a city's power to enact ordinances for an aesthetic purpose is unquestioned.
Therefore, little can be gained in the area of constitutional law, and much lost in the process of democratic decisionmaking, by allowing individual judges in city after city to second-guess such legislative or administrative determinations.
Metromedia, Inc., supra, 453 U.S. at 570, 101 S.Ct. at 2925 (Rehnquist, J., dissenting).
If an ordinance is arbitrarily enforced in a discriminatory manner, it could of course become unconstitutional. For example, the United States Supreme Court was careful to emphasize:
The petitioner was clearly given to understand that under no circumstances would he and his group be permitted to demonstrate in Birmingham, not that a demonstration would be approved if a time and place were selected that would minimize traffic problems. *842 Shuttlesworth v. City of Birmingham, 394 U.S. 147, 158, 89 S.Ct. 935, 942, 22 L.Ed.2d 162 (1969).
A perfectly valid ordinance on vagrancy or drunkenness may be rendered unconstitutional if uniformly and systematically applied only to blacks or some other specific minority group. However, this should not make the ordinance unconstitutional, only its application.
"You should not roll up your pants until you get to the creek," as the late constitutional authority, Congressman Emanuel Celler, was wont to say.
"There is no evidence that the statute has been [or will be] administered otherwise than in the fair and non-discriminatory manner which the state court has construed it to require." [Cox v. New Hampshire, 312 U.S. 569, 577, 61 S.Ct. 762, 766, 85 L.Ed. 1049 (1941)].
* * * * * *
[T]here [is] nothing [here] to show "that the statute has been [or will be] administered otherwise than in the ... manner" [sensitive to and balancing all community interests.]
Shuttlesworth, supra, 394 U.S. at 156, 158-59, 89 S.Ct. at 941, 942-43. Here, there is no allegation that defendant arbitrarily enforced the ordinances.
5. Defendant directly furthered the substantial governmental interest of improving and maintaining the aesthetics within defendant's boundaries by prohibiting off-site outdoor advertising. Id., 453 U.S. at 511-12, 101 S.Ct. at 2894-95.
6. Defendant moreover has not gone farther than necessary to regulate commercial speech by allowing such speech on site and disallowing such speech off site. Id.
The ordinances do not distinguish between commercial and non-commercial messages since the ordinances permit on-site advertising, subject to structural restrictions, and prohibit off-site advertising, subject to the exemptions contained in the ordinances.
Therefore, the ordinances are constitutional.
It is important to have judicial decisions from which definitive principles can be clearly drawn. See Metromedia, Inc., supra, 453 U.S. at 569, 101 S.Ct. at 2924 (Burger, C.J., dissenting).
If affirmed, this case would hold that where exceptions permit adequate opportunity for diverse political expression, and allow the owner of the premises to place signs thereon denoting the lawful business or profession pursued thereon, then a ban on other commercial billboards throughout the community based on aesthetic grounds is valid.
To hold otherwise erodes the federal policy expressed in the Highway Beautification Act. It would dilute powers granted by the state constitution and weaken the authority of duly elected city councils to legislate in the area of aesthetics.

EXHIBIT A

ARTICLE VI. SIGNS[*]
Sec. 5-125. Definitions.
As used in this article the following terms shall have the respective meanings ascribed to them:
Billboards. All signs maintained by advertising agencies which advertise products of their customers or clients, and all business signs individually or privately owned which are not on the premises of the owner or place of business to which they apply; including wall signs and those otherwise attached to buildings and structures, as well as those not attached to buildings and supported by uprights or braces on the ground.
Combined office building. All office buildings combined with convenience, goods, stores or personal service shops.
*843 Erect. To build, construct, attach, hand, place, suspend or affix, and shall also include the painting of wall signs.
Facing or surface. Any surface of the sign upon, against or through which the message is displayed or illustrated on the sign.
Gasoline and oil service stations. Any business which dispenses or is designed to dispense, gasoline and oil for use in motor vehicles and boats.
Ground sign. Any sign erected, constructed or maintained for the purpose of indicating services, articles and products offered within the building, when such sign is supported by one or more uprights, posts or braces placed upon or affixed in the ground and not attached to any part of a building.
Incombustible material. Any material which will not ignite at or below a temperature of twelve hundred (1200) degrees Fahrenheit and will not continue to burn or glow at that temperature.
Illuminated sign. Any sign which has characters, letters, figures, designs or outline illuminated by electric lights or luminous tubes as a part of the sign proper.
Lineal footage. Shall mean that length of the property line along any street with ingress and egress.
Marquee sign. Any sign affixed to a marquee over the entrance to a building, extending and supported from the building.
Occupational signs. All industrial, commercial and mercantile signs advertising the business on its premises or any of its activities, including permanent theater signs used to advertise performances.
Other advertising structure. Any marquee, canopy, awning, street clock, time and weather information, as further defined herein.
Pole sign. Any letter, work, model, sign, device or representation used in the nature of an advertisement or announcement not attached to a building and which is supported by a single stationary pole or multiple poles.
Projection sign. Any letter, work, model, sign, device or representation used in the nature of an advertisement or announcement projecting from the building and not in the same plans as the wall.
Reader board. Any sign that has changeable or removable lettering, with the exception of marquee signs which are covered separately in this article and which is permanently fixed to the ground, building or structure.
Roof line. Shall mean the top of the walls where the roof begins.
Roof sign. Shall mean any sign painted, erected, constructed or maintained upon the roof of any building, including projecting signs attached to a parapet wall that extends above the roof line.
Signs. Every sign, billboard, ground sign, portable sign, pole sign, wall sign, roof sign, illuminated sign, projecting sign, temporary sign, marquee, awning, canopy, time and weather information, and street clock, and shall include any announcement, declaration, demonstration, display, illustration or insignia used to advertise or promote the interest of any person when the same is placed in view of the general public.
Sign area. A total area of the space to be used for advertising purposes, including the spaces between open-type letters and figures, including the background structure, or other decoration or addition which is an integral part of the sign. Sign supports shall be excluded in determining the area of a sign. The total allowable area for a double faced sign where the two (2) faces are substantially parallel shall be the sum of the area of each face and where the two (2) faces are not substantially parallel said total allowable area shall be one-half (½) the sum of the area of each face divided equally between both faces.
Device. Banner, pennant, streamer, wind operated mechanism, flashing lights and any other type of fluttering or flashing instrumentality, but shall not include signs which are defined under this section.
*844 Shopping center. An area containing four (4) or more shops, stores and other places of business permitted under the zoning ordinances, and providing off-street parking facilities in common for all the businesses and their customers.
Structural trim. The molding, battens, cappings, nailing strips, latticing and platforms which are attached to the sign structure.
Wall sign. Any painted sign, letter, work, model, device or representation used in the nature of an advertisement or announcement that may be affixed to the front side or rear wall of any building and in the same plane as the face of the wall.
Window sign. A painted sign, letter, work, model, symbol, logo, device or representation used in the nature of an advertisement or announcement that may be applied or affixed to the window of a structure or building. (Ord. No. 72-8, § 1, 2-2-72)
Sec. 5-126. Compliance with construction codes.
The provisions of the building, electrical and fire prevention codes of the city shall govern the construction, alteration and maintenance of all signs, including outdoor display signs, with their permanent and auxiliary devices, so far as they do not conflict with the provisions of this article. Approval of signs under special permit must be obtained from the design and review board. (Ord. No. 72-8, § 2, 2-2-72)
Sec. 5-127. Exception to requirement for permits and fees.
It shall be unlawful for any person to erect, alter or relocate any sign or other advertising structure in this city without first obtaining a permit therefor from the building official and making payment of the fee, if any, required in section 5-130 except for those signs listed below which are exempted from the requirements for a permit and the overall size and number limitation of signs per lot or building specified elsewhere in this article:
(a) Real estate signs not exceeding twelve (12) square feet in area, which advertise the sale, rental or lease of the premises upon which said signs are located only.
(b) Bulletin boards not over twenty-five (25) square feet in area, for public, charitable or religious institutions which are located on the premises of said institutions and which are permanently mounted on a pole or attached to a building or structure.
(c) Signs denoting the architect, engineer or contractor when placed upon work under construction, and not exceeding sixteen (16) square feet in area.
(d) Memorial signs or tablets, names of buildings and date of erection when cut into any masonry surface or when constructed of bronze or other incombustible materials.
(e) Traffic or other municipal signs, legal notices, railroad crossing signs, danger, and such temporary, emergency or nonadvertising signs as may be approved by the design and review board of the city.
(f) Political signs providing said signs are placed on property that is zoned residential and that individual signs are not over eight (8) square feet in size and that they are removed within ten (10) working days after the date of the election to which the signs pertain. No political signs permitted under this section shall be placed upon any public right-of-way or utility or drainage easement and the city engineer or his representative is authorized to remove and destroy any political sign placed on such right-of-way or easement.
(g) Professional name plates not exceeding three (3) square feet in area.
(h) Occupational signs not over four (4) square feet in area (on building).
(i) Signs erected inside a building and not visible through windows.
(j) Temporary window signs denoting prices of merchandise or special sales conducted or to be conducted in the building, structure or premises on *845 which the sign is located and providing that the total display area of all temporary and permanent advertising devices in the window does not exceed fifty per cent (50%) of the window area and that temporary signs do not remain more than twenty-one (21) days. Exceptions may be permitted by the design and review board. Ord. No. 72-8, § 3, 2-2-72)
Sec. 5-128. Building permits.
(a) Plans and specifications. No building permit shall be granted until after an application has been filed with the building official showing the plans and specifications, including dimensions, material and details of construction of the proposed structure, nor until all the provisions of this section relating to such structure have been complied with.
(b) Agreement. Before a permit can be granted for the installation of any sign, the applicant for said permit must submit an agreement signed by the owners of said property granting permission to applicant to install said sign and binding said owners, their heris and assigns irrevocably, to permit the city through its agents to enter on said real property for the purpose of removing said sign as provided under this article and waiving and holding the city harmless from any damage to said real property and structure thereon occasioned by said removal.
(c) Forms and content. The building official may prescribe suitable regulations not inconsistent with the provisions of this article concerning the form and content of all applications for the various type of permits herein required. (Ord. No. 72-8, § 4, 2-2-72)
Sec. 5-129. Signs under special permit.
(a) The following signs and variations in the requirements of this article may be authorized only by special permit from the design and review board with the approval of the building offical upon a finding that the welfare of the city and its trade and commerce will not be adversely affected:
(1) Awning signs as provided for in section 5-148.
(2) Directional signs as provided for in section 5-154.
(3) Gasoline and oil service station signs as provided for in section 5-149.
(4) Ground signs and all other signs not specifically referred to in this article.
(5) Industrial park signs.
(6) Marquees on which signs or bulletins will be displayed.
(7) Pole or other permanent mounted reader boards.
(8) Shopping center signs including all business signs in shopping centers, except temporary window signs as provided for in section 5-127(j) of this article.
(9) Street clocks.
(10) Temporary banner and cloth signs, except political posters under eight (8) square feet.
(11) Temporary bulletin boards for public, charitable or religious institutions when they are not located on the premises of said institutions.
(12) Temporary real estate signs, subdivision signs and signs giving directions as to real estate for sale and not located on the premises to which they pertain.
(13) Temporary signs relating to events to take place within ninety (90) days.
(14) Permanent theater signs of all types.
(15) Temporary theater signs displayed outside of the building.
(16) Time and weather information signs.
(17) Roof signs.
(18) Signs painted on building surface.
(19) Traditional barber poles when illuminated and/or revolving or proposed as accessory sign in addition to signs permitted under section 5-136 of this article.
(20) Variations in the size, erection and construction when strict compliance would substantially decrease the effectiveness of the sign and the public *846 welfare will not be adversely affected.
(b) The special permits provided for herein shall specify the terms and conditions under which the signs are to be maintained and removed. (Ord. No. 72-8, § 5, 2-2-72)
Sec. 5-130. Permit fees.
(a) No permit fees are required for the erection of signs exempted in section 5-127 or for those listed in subsections (a)(11), (12) and (13) of section 5-129 of this article.
(b) Before the issuance of each required sign permit a fee shall be paid to the building official, as follows:

 (1) Signs twenty-five (25) square feet or
 less in size ------------------------ $10.00
 (2) Signs over twenty-five (25) square
 feet but not over fifty (50) square
 feet -------------------------------- 20.00
 (3) Signs over fifty (50) square feet but
 not over one hundred (100) square
 feet -------------------------------- 30.00
 (4) All signs over one hundred (100)
 square feet ------------------------- 50.00

(c) For each temporary ground sign as defined in subsection (a) and (b) of section 5-157 there shall be no fee.
(d) The permit fees herein provided for shall cover the inspection (inspection fees for periodic maintenance listed in section 5-134) of the location of the proposed signs and the inspection during and after construction, and all monies so collected by the building official shall be turned over to the city collector for deposit in the general revenue fund of the city.
(e) Each face of a sign used for display or advertising purposes shall be taxed as a separate sign. During the progress of construction and erection thereof and at the conclusion thereof, the sign shall be inspected by the building official.
(f) If the sign is illuminated, an electrical permit and inspection by the electrical inspector shall be required. A fee covering the electrical permit and inspection shall be charged as provided by the electrical code. (Ord. No. 72-8, § 6, 2-2-72)
Sec. 5-131. Right to appeal.
Anyone applying for a permit for a sign under the provisions of this article, whose application has been denied, may appeal to the city council for the issuance of such permit, and the council may grant such permit and allow a variation in the strict application of the provisions and requirements of this article where there are practical difficulties or unnecessary hardships, or where the public interest will be best served by allowing such variation. (Ord. No. 72-8, § 7, 2-2-72)
Sec. 5-132. Sign location.
All signs must be located on the property of the business or building they advertise.
Setback lines are given as follows: pole sign, section 5-153; ground sign, section 5-150; and temporary sign, section 5-157; and gasoline and oil service stations, section 5-149. (Ord. No. 72-8, § 8, 2-2-72)
Sec. 5-133. Sign maintenance.
(a) Signs must be kept in good repair and supporting structures must be kept in upright condition.
(b) Painting is required every two (2) years, except where the sign is galvanized or otherwise treated to prevent rust, or unless made of noncorroding material.
(c) The building official shall order the removal of any sign that is not maintained in accordance with the provisions of this article. (Ord. No. 72-8, § 9, 2-2-72)
Sec. 5-134. Periodic inspections; fees.
(a) It shall be the duty of the building official to make, as considered necessary, a thorough inspection of all signs in the city and a fee of five dollars ($5.00) shall be charged for each inspection.
(b) If the sign is an illuminated sign, there shall be at the time of inspection by the building official, an additional inspection by the electrical inspector and a fee shall be charged as provided by the electrical code.
(c) In cases where signs are subject to electrical inspections the engineering department of the city may issue one permit for the electrical work and other construction, and may issue a single receipt covering *847 permit and fees of the electrical inspector. Separate accounting shall be made to the treasurer for all electrical inspection fees collected hereunder.
(d) If the inspection fees are not paid as herein provided, the sign, including standards and supports, shall be removed as provided for in the case of signs erected without a permit. (Ord. No. 72-8, § 10, 2-2-72)
Sec. 5-135. Identification and marking.
Every sign constructed or maintained shall be plainly marked with the name of the person, firm or corporation erecting or maintaining such sign; the permit number; date of erection; and voltage of any electrical apparatus. (Ord. No. 72-8, § 11, 2-2-72)
Sec. 5-136. Limitations on number of signs.
(a) Each building occupied by one person or business (with the exception of gasoline and filling stations which are covered elsewhere in this article) shall be allowed a maximum of two (2) signs, providing that the conditions of this article are met, which may be either a wall sign or a projecting sign, or a roof sign, or a permanently mounted reader board, or a pole sign, but the total number of signs shall not include more than one (1) sign of each of these types.
(b) If the business is located on a corner lot then it may have a wall sign or projecting sign on each street side of the building in addition to one pole sign.
(c) Businesses located in buildings or stores having more than one (1) tenant shall be allowed only on (1) sign which may be either a wall sign, projecting sign or permanently mounted reader board. If, however, a tenant on the ground floor of a combined office building complies with the provisions of section 5-153 he may be allowed a pole sign.
(d) Permanent painted signs on windows that comply with the provisions of this article are in lieu of a wall sign.
(e) One (1) nonilluminated, small scale professional or occupational sign as provided in section 5-127(g) and (h) of this article and/or one (1) "store hours sign" may be lettered on the glass show window or entry door portion of each store or office front of the occupant in addition to the other signs permitted by this section. (Ord. No. 72-8, § 12, 2-2-72)
Sec. 5-137. Unlawful signs generally.
(a) Any new sign installed, erected, or maintained in violation of any provisions of this article shall be an unlawful sign.
(b) Any existing sign enlarged, rebuilt, structurally altered or relocated other than in accordance with the provisions of this article shall be an unlawful sign.
(c) Any existing sign which is no longer applicable to the property or building upon which such sign is located shall be considered an unlawful sign.
(d) Any sign legally existing under prior regulations, but which shall violate any provision of this article, may continue to be maintained and used subject to the following provisions:
(1) Any legally existing sign, under prior regulations that is moved to another location, either on the same or to other premises, shall be considered a new sign.
(2) Any legally existing sign that is enlarged or reconstructed shall be considered to be a new sign, except that neither the relettering, repainting nor ordinary maintenance of such sign, nor the repair or restoration to a safe condition after being damaged by storm or other accidental act, as shown and in accordance with the original sign permit, shall constitute such a change as to classify the sign as a new one.
(3) Any legally existing sign which is or becomes an immediate danger or hazard to persons or property because of being in an unsafe condition, or which obstructs any fire escape, window or door, is subject to the provisions of this article pertaining to the removal of dangerous and hazardous signs.
(4) Any legally existing sign is subject to the provisions of this article requiring *848 that it be painted every two (2) years except where the sign is of noncorroding material or galvanized or otherwise treated to prevent rust, and that it must be kept in good repair and any supporting structures kept in an upright condition. (Ord. No. 72-8, § 13, 2-2-72)
(5) The features noted below shall be eliminated from all signs prior to February 1, 1973:
(i) All flashing lights and flashing devices of any nature;
(ii) All periodic illumination of any lights in a sign in any timing or sequence whatsoever;
(iii) All periodic changes in intensity of illumination;
(iv) All animation or moving parts of any nature. (Ord. No. 72-8, § 13, 2-2-72; Ord. No. 72-64, § 1, 7-19-72)
Sec. 5-138. Specific prohibited signs and devices.
The following signs and advertising devices are specifically prohibited in the city and no other section of this article shall be interpreted to permit any sign so prohibited:
(a) Billboards.
(b) Conflicting signs. Signs or devices which by color, location or design resemble or conflict with traffic-control signs or devices.
(c) Exterior use of advertising devices such as banners and pennants affixed on poles, wires or ropes and streamers, wind operated devices, flashing lights, and any other type of fluttering devices.
(d) Mechanical contrivances. No sign erected in the city shall contain flashers, animators, or mechanical movement or contrivances of any kind, excepting clocks, time and weather information and conventional barber symbols.
(e) Paper posters and painted signs applied directly to the wall of a building or pole or other supports.
(f) Portable signs are prohibited, except as provided for gasoline and oil service stations in section 5-149.
(g) Sign advertising an article or product not manufactured, assembled, processed, repaired or sold upon the premises upon which the sign is located.
(h) Sign advertising a service not rendered on the premises upon which the sign is located.
(i) Revolving signs of any type.
(j) Signs in residential districts for home occupation.
(k) Signs on parking lot light standards.
(l) Show or display signs placed in or on automobiles or other vehicles or written on the windows, doors or panels of automobiles or other vehicles when such vehicles are parked in an area of high public visibility for a period exceeding fourteen (14) hours, except Sundays and holidays. (Ord. No. 72-8, § 14, 2-2-72; Ord. No. 78-114, § 1, 9-20-78)
Sec. 5-139. Fire escape obstruction.
No sign shall be erected or maintained so as to prevent free ingress to or egress from any door, window or fire escape. No sign of any kind shall be attached to a stand pipe or fire escape. (Ord. No. 72-8, § 15, 2-2-72)
Sec. 5-140. Traffic hazards.
No sign or other advertising structure regulated by this article shall be erected at the intersection of any streets in such a manner as to obstruct free and clear vision; or at any location where, by reason of its position, shape or color, it may interfere with, obstruct the view of, or be confused with any authorized traffic sign, signal or device; or which makes use of the words "Stop", "Look", "Drive-in", "Danger" or any word, phrase, symbol or character in such manner as to interfere with, mislead or confuse traffic. Illuminated signs must be so shielded or contain lamps of such reduced intensity as may be prescribed by the building official to assure that they do *849 not constitute a traffic hazard. (Ord. No. 72-8, § 16, 2-2-72)
Sec. 5-141. Obscene matter.
It shall be unlawful for any person to display upon any sign or other advertising structure any obscene, indecent or immoral matter. (Ord. No. 72-8, § 17, 2-2-72)
Sec. 5-142. Violations, punishment; removal no defense.
(a) Any person who shall violate any provisions of this article shall be deemed guilty of a misdemeanor, and each day or part of a day such violation shall continue shall constitute a separate offense.
(b) Upon conviction, a person found violating any provisions of this article shall be punished as provided in section 1-8, Bridgeton Code. The fact that a sign has been removed shall be no defense to prosecution hereunder. (Ord. No. 72-8, § 18, 2-2-72)
Sec. 5-143. Removal of signs; procedure generally.
(a) Unsafe signs may be removed as provided in the building code.
(b) The building official shall order the removal of all unlawful signs as provided for in the case of signs erected without a permit.
(c) If any sign is erected without a permit, the building official shall order it removed and if the order is not complied with within seven (7) days the building official shall have it removed at the expense of the person erecting or maintaining it, and the person causing it to be erected. If the owner or other person in charge of a sign fails to pay the annual electrical inspection fee provided for in section 5-130, the building official shall notify the owner or person charged with the sign that the inspection has been made and that the fee is due, and that the sign is to be removed within seven (7) days unless the fee is paid, and if not so removed the building official shall cause the same to be removed at the expense of the owner. Such expense shall be a lien against the property in favor of the city and shall be imposed and collected in the manner provided by ordinance for the imposition and collection of special tax bills.
(d) The building official is authorized to go upon any premises in the city for the purpose of removing signs under the provisions of this section. Signs removed by the building official shall be retained for the owner's account for a period of thirty (30) days and shall be returned to the owner upon payment of the expenses of the removal. If not claimed within that time they shall be the property of the city and may be destroyed or sold for the payment of expense of removal.
(e) The building official shall order the removal of all unlawful signs as provided for in section 5-137. (Ord. No. 72-8, § 19, 2-22-72)
Sec. 5-144. Unsafe signs.
The building official shall order the removal of any sign of immediate danger or hazard to persons or property as provided in the building code. It shall be unlawful for any person to maintain or to permit to remain upon any premises owned, leased, occupied or used by him, or it, with notice thereof, any unsafe or insecure sign liable to injure any person or property, or to maintain or permit to remain on any such premises any sign which because of condition or appearance would have a damaging effect upon other property in the city. (Ord. No. 72-8, § 20, 2-2-72)
Sec. 5-145. Roof signs.
(a) Every roof sign shall be constructed entirely of an incombustible material; the uprights, supports and braces shall be constructed entirely of metal, and shall be securely anchored or otherwise fastened or supported so that it will not constitute a menace to persons or property. All roof signs shall be so constructed or so erected as to stand the wind pressure of not less than thirty (30) pounds per square foot of area subjected to such pressure.
(b) No roof signs shall exceed, in square foot size, the linear front footage of the portion of the building the business occupies. No roof sign shall project higher than four (4) feet above the roof line and anchors thereof shall be kept in good repair. The building official shall order the *850 removal of any sign that is not maintained in accordance with the provisions of this section. (Ord. No. 72-8, § 21, 2-2-72)
Sec. 5-146. Wall signs.
(a) No wall sign shall extend above the roof line nor beyond the building line more than eighteen (18) inches, except, however, if the sign is illuminated the light reflectors may project six (6) feet, beyond the building line. No wall sign shall exceed, in square foot size, the linear front footage of the property located thereon, less the total square footage of any existing signs located on said property. All wall signs shall be made of incombustible materials and safely and adequately attached to such buildings.
(b) Signs painted on the building surface are permitted only by special permit as provided in section 5-129(a)(18) and must conform to all provisions of this article. (Ord. No. 72-8, § 22, 2-2-72)
Sec. 5-147. Projecting signs.
(a) A projecting sign relating to services, articles, and products within the building to which the sign is attached and which does not exceed twenty-five (25) square feet in area for each building or store fronting a public street or road shall be allowed. However, if a building is occupied by only one tenant and the front wall area adjoining a public street exceeds five hundred (500) square feet, such building may have a projecting sign with an area equal to five per cent (5%) of the area of the front wall of the building on which the sign is to be installed. The maximum permitted sign area, under any conditions, or any one building occupied by one tenant shall not exceed two hundred fifty (250) square feet.
(b) Buildings located on corner lots may have one such sign on each street or road-side of the building, provided the building wall area adjoining each street is computed separately for each allowable sign area.
(c) No projecting sign shall extend more than four (4) feet six (6) inches from the building including structural supporting or extending members attached to the building.
(d) No projecting sign shall project nearer to the curb line than two (2) feet.
(e) No projecting sign shall extend downward nearer than ten (10) feet to the ground or pavement.
(f) No projecting sign shall extend above the roof line. Every projecting sign must be constructed and braced to withstand a horizontal wind pressure of not less than thirty (30) pounds for every square foot of surface exposed and shall be securely attached to the building wall in an approved manner.
(g) A projecting sign shall be constructed of incombustible material. (Ord. No. 72-8, § 23, 2-2-72)
Sec. 5-148. Awning signs, flags and banners.
No advertising sign, flag or banner shall be attached to or be suspended from any awning, except that a sign may be painted upon the valance of any canvas awning or in a single line of letters not more than six (6) inches in height, and the wording shall be confined to the following: the number of the premises; the name of the building or institution; and/or the general business or trade carried on in the building. Such sign shall not have a total length to exceed seventy-five per cent (75%) of the length of the valance and shall not advertise any particular article, nor shall any such sign refer to a price. (Ord. No. 72-8, § 24, 2-2-72)
Sec. 5-149. Filling station signs.
Advertising signs for gasoline and oil filling stations shall conform to the following requirements in lieu of any other requirements:
(a) One pole sign not exceeding thirty-six (36) square feet for each face situated on private property.
(b) The pole sign must be so located that no part of the sign may project beyond a five (5) foot setback line from the street or highway right-of-way.
(c) No pole sign shall extend downward nearer than ten (10) feet to the ground or pavement.

*851 (d) Maximum height of pole sign is twenty-eight (28) feet.
(e) A wall sign not exceeding twenty-five (25) square feet in area and projecting no more than twelve (12) inches facing the street.
(f) Buildings on corner lots may have such a sign on each street side of the building.
(g) One portable sign on private property not exceeding twelve (12) square feet on each side. (Ord. No. 72-8, § 25, 2-2-72)
Sec. 5-150. Ground signs.
(a) No ground sign (as defined in section 5-125) shall be at any point over fifteen (15) feet above the ground level and shall have an open space of one (1) foot between the lower edge of such sign and the ground level.
(b) Every ground sign shall be stoutly constructed and anchored in a secure and substantial manner.
(c) The ends of all such signs shall be at least six (6) feet distant from any wall or fence, or any obstruction which would prevent a clear passage around.
(d) No ground sign shall exceed one hundred (100) square feet in area. Not more than one ground sign shall be erected on any one lot or tract of land, or one sign for each three hundred (300) feet of frontage and located at least three hundred (300) feet apart on such lot or tract of land.
(e) No ground sign when erected on a lot fronting on intersection streets shall be erected within fifty (50) feet of the intersection of the streets.
(f) Ground signs may be erected or installed using the same setback required for pole signs (sign must be located so that no part of the sign projects beyond a five (5) foot setback line from the street or highway right-of-way) if the ground sign does not exceed thirty-six (36) square feet.
(g) Any ground sign in excess of thirty-six (36) square feet must not extend beyond the established building line. (Ord. No. 72-8, § 26, 2-2-72)
Sec. 5-151. Industrial park signs.
When the general welfare of the inhabitants of the city will not be adversely affected the special permit for a sign in industrial parks may take into consideration the greater distance from the adjacent streets and highways of certain buildings, and the design and review board may grant variations as to size, area and location of the signs in such industrial parks. (Ord. No. 72-8, § 27, 2-22-72)
Sec. 5-152. Marquees.
(a) Marquees and marquee signs may extend to a point two (2) feet back of the curb line, but no such marquee or sign shall extend downward nearer than eleven (11) feet above the level of the sidewalk at its lowest level.
(b) There may be placed thereon an illuminated sign which may extend the entire length and width of the marquee, provided such sign does not extend more than nine (9) feet above nor one (1) foot below such marquee, but under no circumstances shall the sign have a vertical width of greater than nine (9) feet.
(c) No additional sign shall be attached to a marquee. (Ord. No. 72-8, § 28, 2-2-72)
Sec. 5-153. Pole signs generally.
(a) One (1) pole sign shall be allowed for each building or store fronting a public street which is occupied by only one person, or business, providing that not more than one (1) sign shall be allowed on the poles supporting the sign. Subject, however, to the specific provisions of this article regarding the total number of signs allowed for each business as provided for in section 5-136.
(b) Pole signs shall not exceed in square feet the linear footage of property located thereon less any existing signs.
(c) Maximum height of pole sign is thirty (30) feet.
(d) The pole sign must be so located that no part of the sign may project beyond a five (5) foot setback line from the street or highway right-of-way.
*852 (e) No pole sign shall extend downward nearer than ten (10) feet to the ground or pavement.
(f) A pole sign shall be constructed of incombustible material.
(g) For buildings or stores fronting a public street that have more than one tenant, a pole sign shall be allowed not to exceed forty-eight (48) feet for each ground floor tenant having a minimum of fifty (50) feet store frontage, providing that the pole sign complies with the above regulations.
(h) In the case of a multiple occupancy building or project, one (1) pole sign containing the name or use of the building for each wall adjacent to a public street, subject, however, to the specific provisions of this article regarding the total number of signs of all types. Tenants of said building or project shall not be permitted pole signs. (Ord. No. 72-8, § 29, 2-2-72)
Sec. 5-154. Small directional signs.
Small post signs indicating the direction to a business (exit and entrance) may be erected and maintained providing:
(a) The building official shall investigate and make his finding that the sign will serve a public purpose and that a public necessity for such directional sign exists;
(b) Shall issue its special permit therefor; and
(c) Such signs shall not exceed eighteen (18) inches by twenty-four (24) inches in size, and shall be installed under the supervision of the building official in a manner and at a height so as not to interfere with the ordinary and lawful use of the street. (Ord. No. 72-8, § 30, 2-2-72)
Sec. 5-155. Reader signs.
Permanently mounted reader boards are permitted with special permit by the design and review board, provided they comply with all provisions of this article. (Ord. No. 72-8, § 31, 2-2-72)
Sec. 5-156. Shopping center signs.
When the general welfare of the inhabitants of the city will not be adversely affected the special permit for signs in shopping centers may take into consideration the greater distance from the adjacent streets and highways of certain buildings, and the design and review board may grant variations as to size, area and location of the signs in such shopping centers. (Ord. No. 72-8, § 32, 2-2-72)
Sec. 5-157. Temporary signs.
(a) Temporary ground signs advertising or announcing the future use of development of the property on which such signs are located may be maintained subject to the provisions of this article, provided such signs do not exceed one hundred (100) square feet in area or remain longer than six (6) months.
(b) "For Rent" and "For Lease" signs in commercial or industrial districts for new buildings shall not exceed forty-eight (48) square feet or remain more than ninety (90) days after the building is completed.
(c) "For Rent" and "For Lease" signs in commercial, local business, or industrial districts for existing buildings (when they become vacant) shall not exceed twelve (12) square feet or remain more than ninety (90) days, but may be renewed upon request.
(d) Temporary ground signs must be located so that no part of the sign projects beyond a five (5) foot setback line from the street or highway right-of-way.
(e) "For Rent", "For Sale" or "For Lease" signs for new subdivisions and signs advertising the development of a new subdivision, shall not exceed forty-eight (48) square feet or remain more than ninety (90) days after the subdivision is completed. Said signs must be posted on the subdivision property. Security in the form of a certified check in the amount of one hundred dollars ($100.00) shall be deposited with the city clerk, to be refunded upon satisfactory compliance with permit requirements. (Ord. No. 72-8, § 33, 2-2-72)
Sec. 5-158. Reflectors and lights.
Goose neck reflectors and lights are permitted on ground signs, and wall signs if the reflectors are provided with proper glass lenses concentrating the illumination *853 upon the area of the sign so as to prevent glare upon the street or adjacent property. (Ord. No. 72-8, § 34, 2-2-72)
Sec. 5-1595-168. Reversed.

ARTICLE VII. MECHANICAL CODE
Sec. 5-169. Adopted.
The St. Louis County Mechanical Code, as amended (section 1101.025 of the county Code), adopted May 4, 1974, is hereby adopted as the mechanical code of the city as fully as if set out herein. (Ord. No. 78-88, § 1(6), 7-12-78)
Editor's note  Ord. No. 78-88, adopted July 12, 1978, did not specifically amend this Code; hence inclusion of § 1(6) as § 5-169 was at the discretion of the editor.
Sec. 5-170. Terms of agreement; compensation; restrictive provisions.
(a) Terms of agreement. The county shall provide the city code enforcement services as specified in section 5-169, commencing on May 3, 1978, and continuing from year to year; however either party may terminate upon giving ninety-day prior written notice.
(b) Compensation. The county shall collect all fees and shall retain two-thirds of the fees and remit quarterly one-third of the fees to the city.
(c) Restrictive provisions. If the city has adopted provisions more restrictive than those contained in the applicable county code, the city shall approve all plans prior to submission to the county's department of public works. The city shall approve all plans for compliance with zoning or other regulatory ordinances prior to submission to the county's department of public works. (Ord. No. 78-49, § 2, 5-3-78)
Editor's note  Ord. No. 78-49, adopted May 3, 1978, did not specifically amend this Code; hence inclusion of § 2 as § 5-170 was at the discretion of the editor.

EXHIBIT B
BILL NO. 3087
As revised 8-15-84
 ORDINANCE NO. 84-54
 BY: _________________________

AN ORDINANCE AMENDING ARTICLE VI OF CHAPTER 5 OF THE BRIDGETON CODE OF ORDINANCES TO PROVIDE REVISED REGULATIONS FOR SIGNS AND STREET GRAPHICS.
____________________________________
WHEREAS changes in recent years have indicated a need for a complete revision of the sign regulations adopted in 1972; and
WHEREAS the Design and Review Board, after review and study, has, by letter dated March 29, 1984, recommended a completely new set of sign regulations; and
WHEREAS the City Council finds the present sign regulations inadequate to afford the control of the design and placement of signage appropriate to current development.
NOW THEREFORE BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF BRIDGETON, MISSOURI, AS FOLLOWS:
Section 1. Article VI of Chapter 5 of the Bridgeton Code of Ordinances is repealed in its entirety and a new Article VI of Chapter 5 enacted to read as follows:

PROPOSED SIGN REGULATIONS  JANUARY 1, 1984

 Section 5-125 ..........Statement of Purpose
 Section 5-126 ..........Definitions
 Items of Information
 Section 5-127 .......... Allowed
 Table of Design
 Section 5-128 .......... Elements
 Section 5-129 ..........Manner of Display
 Construction and
 Section 5-130 .......... Maintenance
 Section 5-131 ..........Street Graphics Exempt
 Street Graphics
 Section 5-132 .......... Prohibited
 Section 5-133 ..........Special Graphics
 Section 5-134 ..........Permits and Fees
 Non-Conforming Street
 Section 5-135 .......... Graphics and Signs
 Programs for Graphics

*854
 Section 5-136 .......... and Signs
 Section 5-137 ..........Variances
 Powers of Board of
 Section 5-138 .......... Adjustment
 Section 5-139 ..........Removal of Signs

ARTICLE VI STREET GRAPHICS

SECTION 5-125  STATEMENT OF PURPOSE
The purpose of these regulations is to create the legal framework for a comprehensive but balanced system of street graphics, and thereby to facilitate an easy and pleasant communication between people and their environment. With this purpose in mind, it is the intention of these regulations to authorize the use of street graphics which are:
a) Compatible with their surroundings;
b) Appropriate to the type of activity to which they pertain;
c) Expressive of the identity of individual proprietors or of the community as a whole; and
d) Legible in the circumstances in which they are seen.

SECTION 5-126  DEFINITIONS
Unless the context otherwise requires, the following definitions shall be used in the interpretation and construction of this article.
ACTIVITY: An economic unit designated in the classification system given in the 1972 Standard Industrial Classification Manual published by the U.S. Department of Commerce, Office of Federal Statistical Policy and Standards.
DISTRICT: Any section of the City of Bridgeton designated by the Zoning Ordinance as a residential, business, manufacturing or special district.
FACE: Any surface against or through which a street graphic is displayed or illustrated.
GROUND SIGN: A street graphic supported by one or more uprights, posts or bases placed upon or affixed in the ground and not attached to any part of a building and that does not exceed the maximum height designated for a ground sign in Section 5-128.
ILLUMINATED SIGN: A street graphic which has characters, letters, figures, designs or the outline illuminated by electric lights or luminous tubes.
MARQUEE SIGN: A street graphic affixed to a permanent canopy over the entrance to a building.
POLE SIGN: A street graphic supported by one or more poles placed in the ground and not attached to any part of a building and that exceeds the maximum height designated for a ground sign in Section 5-128.
PROJECTING SIGN: A street graphic attached to and projecting from a building and not in the same plane as the wall.
READER BOARD: Any street graphic that has changeable or removable lettering and which is permanently mounted as a wall, pole, or ground sign.
ROOF SIGN: A street graphic painted, erected, constructed, or maintained upon the roof of a building.
SIGN AREA: Total area of the space used to display a street graphic not including supporting poles and structure. For a sign with two faces that are parallel and supported by the same poles or structure, the area of the sign equals one-half the total area of the two faces. For a sign with two or more faces supported by the same poles or structure but not parallel, the area of the sign equals the total area of all faces.
STREET GRAPHIC: Any character or letter and/or figure, symbol, design, work, model or device, and attendent background field, used to attract attention and/or convey a message and which is visible to any area outside of a building. The term includes banners, pennants, streamers, moving mechanisms and lights.
WALL SIGN: A street graphic painted on or attached to a wall of a building and in the same plane as such wall.
WINDOW SIGN: A street graphic applied, painted or affixed to or in the window of a building.
*855 ZONING ORDINANCE: The zoning ordinance of the City of Bridgeton, Missouri.

SECTION 5-127  ITEMS OF INFORMATION ALLOWED
a) On the property which it occupies, each activity is entitled to display, on each street and parking lot on which it fronts, street graphics containing a total of items of information up to the maximum designated in Section 5-128. However if the name of the activity contains more than the maximum number of items of information permitted, such name may be displayed once on each frontage provided no other graphic for that activity is displayed on the building or premises.
b) An "item of information" means any of the following: a syllable of a word; an abbreviation; a number; a symbol; a geometric shape. In addition, street graphics combining several different geometric or non-geometric shapes of unusual configuration are to be assessed one additional item for each non-continuous plane.
c) In computing items of information, lettering less than three inches in height as well as street address numbers of any size are not included if contained in a window sign or a wall sign.

SECTION 5-128  TABLE OF DESIGN ELEMENTS
The accompanying Table of Design Elements shall apply to all street graphics and signs governed by these regulations. For purposes of applying such Table the following criteria shall be used:
a) Except as otherwise provided in this subsection, commercial activities are those first permitted by the Zoning Ordinance in a Business District, and industrial activities are those first permitted by the Zoning Ordinance in a Manufacturing District. Institutional activities include those in Standard Industrial Classification Categories 805 (Nursing and Professional Care Facilities); 806 (Hospitals); 821 (Elementary and Secondard Schools); 822 (Colleges, Universities, Professional Schools and Junior Colleges); 841 (Museums and Art Galleries); 842 (Arboreta, Botanical Gardens and Zoological Gardens); 866 (Religious Organizations).
b) Locale "A" refers to a location fronting on and facing a parking lot, and 30 feet or more feet from the street right-of-way and not visible from Interstate or 70 and 270.
Locale "B" refers to a location fronting on and within 30 feet of the right-of-way of any street not included in Locale "D" or "C".
Locale "C" refers to a location fronting on and facing and within 30 feet of the right-of-way of St. Charles Rock Road, Natural Bridge Road and Lindbergh Boulevard.
Locale "D" refers to a location fronting on and facing Interstate 70 and 270.
c) Height of a ground, pole, or projecting sign is measured from the ground level at or below the sign. Height of a roof sign is measured from the top of the walls where the roof begins.
d) Size of a wall sign is expressed as a percentage of the signable area. Signable area is the area of a wall of the building exclusive of doors, windows and major architectural details. Wall signs placed in the space between windows may not exceed in height more than two-thirds the distance between the top of a window and the sill of the window above. Wall signs may not extend above the second story of buildings having three or more stories; provided that in local "D" there may be not more than one wall sign at the top of the wall.
e) Window signs may be located only in ground floor windows.

*856
 TABLE OF DESIGN ELEMENTS
 Permanent
 Pole Sign Projecting Sign Ground Sign Roof Sign Wall Sign Window Sign
 Max. Max. Max. Min. Max. Max. Min. Max. Max. Max. Max.
 Items Information Area Height Height Area Height Height Area Height Area Height Maximum Area  % of % of Window
Locale Sqft. Ft. Ft. Sqft. Ft. Ft. Sqft. Ft. Sqft. Ft. Signable Area Area 
COMMERCIAL ACTIVITY SURROUNDED BY OR BORDERED ON ALL SIDES EXCEPT THE REAR PROPERTY LINE BY COMMERCIAL AND/OR INDUSTRIAL ACTIVITIES
 A 12 Not Permitted 10 15 8 10 7 Not Permitted 20 20
 B 9 30 20 10 30 20 10 30 10 Not Permitted 20 20
 C 9 50 25 10 Not Permitted 50 10 50 5 20 20
 D 8 100 35 10 Not Permitted 100 10 100 10 20 Not Permitted
COMMERCIAL ACTIVITY BOUNDED ON EITHER SIDE AND/OR ACROSS A STREET FROM INSTITUTIONAL AND/OR RESIDENTIAL ACTIVITIES
 A 12 Not Permitted 6 12 8 10 5 Not Permitted 15 15
 B 9 20 15 10 20 15 10 20 7 Not Permitted 15 15
 C 9 30 20 10 Not Permitted 30 7 Not Permitted 15 15
 D 8 60 30 10 Not Permitted Not Permitted Not Permitted 15 Not Permitted
INDUSTRIAL ACTIVITY SURROUNDED BY OR BORDERED ON ALL SIDES EXCEPT THE REAR PROPERTY LINE BY COMMERCIAL AND/OR INDUSTRIAL ACTIVITIES
 A 12 Not Permitted 10 15 8 10 7 Not Permitted 15 15
 B 9 30 20 10 Not Permitted 30 10 Not Permitted 15 15
 C 9 50 25 10 Not Permitted 50 10 50 5 15 15
 D 8 100 35 10 Not Permitted 100 10 100 10 15 Not Permitted
INDUSTRIAL ACTIVITY BOUNDED ON EITHER SIDE AND/OR ACROSS A STREET FROM INSTITUTIONAL AND/OR RESIDENTIAL ACTIVITIES
 A 12 Not Permitted 6 12 8 10 5 Not Permitted 15 15
 B 9 20 15 10 Not Permitted 20 7 Not Permitted 15 15
 C 9 30 20 10 Not Permitted 30 7 Not Permitted 15 15
 D 8 60 30 10 Not Permitted Not Permitted Not Permitted 15 Not Permitted
INSTITUTIONAL ACTIVITY ANYWHERE
 A 12 Not Permitted 6 12 8 10 5 Not Permitted 15 15
 B&C 9 25 15 10 Not Permitted 25 7 Not Permitted 15 15
 D 8 60 30 10 Not Permitted 30 7 Not Permitted 15 Not Permitted

*857 SECTION 5-129  MANNER OF DISPLAY
Notwithstanding anything else contained in this Article VI, the following restrictions shall govern all street graphics:
a) Provided that the items of information allowance authorized by Section 5-128 is not exceeded, street graphics may be displayed as ground signs, pole signs, wall signs, window signs, projecting signs, roof signs or special graphics except as prohibited by Sections 5-128 and 5-129.
b) A single activity that is the sole occupant of the premises may have up to two street graphics, provided that such activity fronting on two or more streets and parking lots or pedestrian malls or walks may have up to four street graphics, no more than two of which may face the same frontage.
c) For a building occupied by more than one activity and for groups of buildings for which off-street parking facilities are provided in common for all occupants, there shall not be more than one pole or ground sign facing each street upon which the building or group of buildings fronts, and not more than one wall or projecting sign for each activity. The maximum size restrictions for such pole and ground signs may be increased by up to 50 percent if three or more activities share the sign.
d) It shall be unlawful for any person to display upon any street graphic or supporting structure any obscene, indecent or immoral matter.
e) A ground or pole sign which is over six square feet in area may be displayed only on a frontage of 70 feet or more and may not be closer than 70 feet to any other ground or pole sign which is over six square feet in size.
f) Projecting signs may project no more than four feet six inches from the building and are not permitted at the intersection of building corners except at right angles to a building wall. No projecting sign may be closer than 30 feet to any other projecting sign.
g) All street graphics may be illuminated and/or non-illuminated except as prohibited by this Article VI.

SECTION 5-130  CONSTRUCTION AND MAINTENANCE
a) All street graphics, signs and supporting structures shall comply with applicable requirements of the building, electrical and fire prevention codes of the City, including the requirements of Sections 5-20 and 5-85.
b) Street graphics, signs and supporting structures must be maintained in good repair and appearance. The City Engineer or his designated representative shall order the removal of any street graphic, sign or structure not so maintained.
c) No street graphic or sign shall be erected or maintained so as to prevent free ingress to or egress from any door, window or fire escape. No street graphic of any kind shall be attached to a stand pipe or fire escape.
d) No street graphic or sign shall be erected at the intersection of any streets in such a manner as to obstruct free and clear vision; or at any location where, by reason of its position, shape or color, it may interfere with, obstruct the view of, or be confused with any authorized traffic sign, signal or device; or which makes the use of the words "Stop", "Look", "Drive-in", "Danger" or any word, phrase, symbol or character in such manner as to interfere with, mislead or confuse traffic. Illuminated signs must be so shielded or contain lamps of such reduced intensity as may be prescribed by the City Engineer or his designated representative to assure that they do not constitute a traffic hazard.
e) No part of any street graphic or sign shall be located closer than five feet to a street right-of-way.

SECTION 5-131  STREET GRAPHICS EXEMPT
The following street graphics are exempt from the provisions of these regulations:
a) Temporary real estate signs not over 12 square feet in area in Residential Districts or 48 square feet in area in Business *858 and Manufacturing Districts which advertise the sale, rental or lease of only the premises upon which the sign is located and which are of professional quality in appearance; provided that not more than two such signs are permitted on a single premises.
b) Reader Boards not over 15 square feet in area which are located on the premises of a public, charitable or religious institution and which are permanently mounted.
c) Temporary signs not over 48 square feet in area denoting the architect, engineer, project name, source of financing, and/or contractor when placed upon work under construction provided that not more than two such signs are permitted on a single premise.
d) Municipal signs, legal notices, traffic control devices, and such temporary or emergency non-advertising directional signs as may be approved by the City Engineer or his designated representative.
e) Political signs not over 8 square feet in area that are placed in a Residential District only and that are removed within 10 working days after the date of the election to which they pertain. The City Engineer or his designated representative is authorized to remove and destroy without notice, political signs placed on any public right-of-way or utility or drainage easement.
f) Signs not over 3 square feet in area located on residential property and designating only the name of the occupant and/or the address of the premises where displayed.
g) Garage sale signs not over 6 square feet in total area provided they are displayed for a period not exceeding 2 days and further provided they are displayed only on the premises where the sale they refer to is being held.
h) The official flag of the United States of America, the State of Missouri, the County of St. Louis and the City of Bridgeton when displayed on a pole not exceeding 30 feet in height. The official flag of any other nation or state or of a church, when displayed on a pole not exceeding 30 feet in height, provided that such flags are displayed on not more than one pole.
i) Temporary window signs not exceeding in size 15 percent of the window area and displayed for a period not exceeding 14 days.
j) Temporary graphics as may be authorized under Section 5.11 of the Zoning Ordinance.

SECTION 5-132  STREET GRAPHICS PROHIBITED
Except as provided in Sections 5-131(j), 5-133 and 5-135 the following street graphics are specifically prohibited:
a) Graphics advertising a service not provided or an article or product not manufactured, assembled, processed, prepared or sold upon the premises upon which the graphic is located.
b) Graphics which by color, location and/or design resemble or conflict with traffic-control signs or signals.
c) Devices such as flags, banners, streamers and/or pennants affixed on poles, wires, or ropes, except as provided in Section 5-131(h); flashing lights, fluttering or wind operated devices, and flashers, animators or mechanical movement or contrivances of any kind.
d) Paper posters and painted signs applied directly to the wall of a building or a pole or other support.
e) Portable street graphics of any type.
f) Revolving street graphics of any type.
g) Street graphics in residential districts relating to home occupations.
h) Street graphics attached to parking lot light standards.
i) Open flames and torches.

SECTION 5-133  SPECIAL GRAPHICS
a) In Business and Manufacturing Districts marquee signs are permitted for all activities. Marquee signs may extend not more than six feet above nor more than one foot below the canope; provided that such sign shall be at least eight feet above the level of the ground beneath it. Marquee *859 signs shall not exceed the allowable size of a pole sign at the same location.
b) Time-and-temperature devices, as well as electronic and non-electronic reader boards, for all activities are permitted in all Business and Manufacturing Districts. They may be displayed as a pole, ground or projecting sign, and are subject to the regulations applicable to such signs at the same location. No such device may be closer than 300 feet to any other such device.
c) Signs not exceeding six square feet in area that provide direction only to pedestrian or motor vehicular traffic entering, leaving or on the premises where such signs are located are permitted in all Districts.
d) Signs not exceeding 30 square feet in area providing information to the user of a drive-up window on the premises are permitted in all Business and Manufacturing Districts.
e) Limitations with respect to items of information displayed apply to all special graphics except the numerals indicating the time and/or temperature, letters on reader boards which are less than five inches in height, and graphics as permitted under Sub-sections (c) and (d) above.

SECTION 5-134  PERMITS AND FEES
No permits or fees are required for signs listed in Section 5-131. Permits shall be secured for all other permitted signs prior to their erection, alteration or refacing. Prior to the issuance of a permit for a sign, the design of the street graphic shall be reviewed and approved by the Design and Review Board for aesthetic compatibility with the surrounding area, and a fee shall be paid to the City in accordance with the following schedule.
a) Signs less than twenty-five (25) square feet in size  $15.00
b) Signs at least twenty-five (25) square feet but less than fifty (50) square feet in size  $25.00.
c) Signs at least fifty (50) square feet but less than one hundred (100) square feet in size  $50.00.
d) All signs one hundred (100) square feet or larger in size  $100.00.
The permit fees herein provided for shall cover the inspection of the location of the proposed sign and the inspections during and after construction.

SECTION 5-135  NON-CONFORMING STREET GRAPHICS AND SIGNS
a) Any street graphic and/or sign lawfully erected and in existence at the effective date of this Article VI of Chapter 5 of the City Code of Ordinances or any amendment thereto that does not conform to the regulations pertaining to street graphics and signs contained in said article, may be continued, except as otherwise provided herein, provided it shall be kept in good repair and maintenance including repainting or refacing with the identical street graphic.
b) Whenever any non-conforming sign is damaged or destroyed by any means to the extent of sixty (60) percent or more of its replacement value at that time, the sign may be rebuilt or replaced and used thereafter only in conformance with the regulations pertaining to street graphics and signs.
c) Whenever any non-conforming sign ceases to be used or does not contain a street graphic applicable to an activity on the premises for a period of six months or longer, the sign may be used thereafter only if it is brought into conformity with the provisions of the regulations pertaining to street graphics and signs.
d) Whenever the non-conforming street graphic on a sign is to be changed in any respect to a new or different street graphic, whether pertaining to the same or a different activity, the new or different street graphic shall conform to the regulations on items of information allowed contained in Sections 5-127 and 5-128.
e) A non-conforming street graphic and/or sign may be relocated on the same or different premises and/or enlarged only if both the street graphic and the sign are brought into conformity with the provisions *860 of the regulations pertaining to street graphics and signs.

SECTION 5-136  PROGRAMS FOR GRAPHICS AND SIGNS
a) The owner or developer of a tract of land, comprising an area of not less than one acre and which is proposed as the site for a single integrated development consisting of one or more buildings and associated off-street parking and loading areas, may propose to the Design and Review Board an overall program of graphics and signs for such development. The program of graphics and signs shall include necessary special graphics and shall provide styles, sizes, locations and colors appropriate to the function and architectural character of the proposed development and compatible with existing development on adjacent property. The program shall conform to all requirements of this Article VI except those regarding the size, location, type and number of signs which may be varied by the Board if it finds the overall program to be in harmony with the intent and purpose of the sign regulations.
b) Upon approval of an overall program of graphics and signs by the Design and Review Board, no permit shall be issued for a sign and/or graphic on the premises covered by the program which does not conform with the approved program. Applications for such permits shall be processed in the same manner as any other application for a sign permit and shall be subject to the same schedule of permit fees.
c) If the owner or developer of the tract of land fails or is unable to carry out the plan for development of the site in a timely manner, the Design and Review Board may rescind its approval of the overall program for graphics and signs. Such recision shall be considered only after the Board has notified the owner or developer of its intent and has provided an opportunity for the owner or developer to appear before the Board to state his views on the contemplated action.

SECTION 5-137  VARIANCES
a) Any person desiring a variation in the regulations pertaining to street graphics and signs, or who is aggrieved by any decision made by the City Engineer or his designated representative in administering such regulations, may appeal to the City Council. Such appeal shall be taken within thirty (30) days of the date of denial of a permit for a sign, by filing with the City Engineer a notice of appeal specifying the grounds thereof. The City Engineer shall forthwith transmit to the City Council all the papers constituting the record upon which the action appealed from is taken. Six (6) affirmative votes of the City Council shall be required to grant a variance from or reverse a decision made by the City Engineer or his representative in administering the regulations pertaining to street graphics and signs.
b) To vary the regulations the City Council shall make a finding of fact based upon the evidence presented to it in each specific case, showing that all of the following conditions exist:
1) That the conditions upon which the requested variation is based will result in a particular hardship upon the appellant, as distinguished from a mere inconvenience, if the strict letter of the regulations were carried out.
2) That the conditions upon which the requested variation is based are not generally applicable to other property or similar activities in the City.
3) That the alleged difficulty or hardship has not been created by any person acquiring or holding an interest in the property since June 6, 1984.
4) That the granting of the variation will not endanger the public safety, or be detrimental to the public welfare or substantially injurious to other property or activities in the neighborhood in which the property is located.
The City Council may impose such conditions and restrictions upon the premises benefitted by a variation as may be necessary to prevent injurious effects therefrom upon other property or activities in the neighborhood and to better carry out the general intent of the regulations.

*861 SECTION 5-138  REMOVAL OF SIGNS
a) The City Engineer or any member of his department designated by him is authorized to remove or have removed any unlawful sign, or any sign erected without a permit, provided notice and opportunity to be heard are given to the owner or person in charge of a sign as hereinafter set forth.
b) Notice and opportunity to be heard shall be given to the owner or person in charge of such signs as follows:
1) Notice and opportunity to be heard shall be given to the owner or person in charge of a sign prior to the removal of any such sign except in a situation determined by the City Engineer or his designated representative to be an "Emergency Situation". In all Emergency Situations, notice and opportunity to be heard shall be given to the owner or person in charge of a sign as soon as possible after the sign has been removed. As used herein Emergency Situations shall include those situations where signs are erected in areas or are maintained in a condition which pose a real and imminent danger or hazard to the safety of others or which are a menace to traffic.
2) The notice required hereunder shall be in writing and shall be mailed to the owner or person in charge of the sign as reflected in the official records. If advance notice and opportunity to be heard are required hereunder, notice shall be mailed at least seven business days in advance of any removal. In the event the name and address of the registered owner or person in charge of a sign cannot be ascertained, notice shall be posted in a conspicuous place where the sign is erected. The notice shall specify the description of the sign, the place from which it was or will be removed, the reason for the removal, the amount of any actual or proposed removal or storage charges, the owner's right to a hearing concerning the removal, the manner in which a hearing may be obtained or a bond posted, the right to bring a representative to the hearing, and the date after which the sign will be sold.
3) The hearing provided hereunder shall be held before the City Engineer or his designated representative. Formal rules of evidence shall not apply; however, the party shall have the right to present evidence, confront and cross-examine witnesses, and receive a written decision based upon the facts adduced at the hearing. An owner may request a hearing either orally or in writing and the hearing, except upon the owner's request with the consent of the City, shall be held within twenty-four hours of the hearing request; but if such hearing is not requested within seven business days after mailing or posting of the notice, as above provided, the sign may be removed.
4) The City Engineer or his designated representative shall, within two business days of conducting a hearing under this section, state in writing his decision as to whether such sign is unlawful or erected without a permit, along with his reasons for so finding. The written decision, along with the reasons for such decision, will be mailed or posted in the manner set forth herein for providing notice of hearing. Such written decision shall constitute a full and final determination of the matters in dispute.
c) The City Engineer or his designated representative is authorized to go upon any premises in the City for the purpose of removing signs under the provisions of this section:
1) for which it has been determined that an Emergency Situation exists;
2) for which no hearing has been requested within seven business days of the mailing or posting of notice; or
3) for which a final determination has been made that the sign is unlawful or has been erected without a permit.
d) The owner or person in charge of any sign so removed may recover same upon furnishing evidence of his identity and ownership of the sign, signing a release and payment of all costs, expenses and charges involved in removal and storage of such sign, or posting bond therefor pending the outcome of any hearing requested.
e) Any sign not claimed within thirty (30) days after removal, may be destroyed or sold in any commercially reasonable manner, and the proceeds of the sale applied *862 toward the charges for removal and storage, and the balance of the proceeds, if any shall be paid to the City's general funds.
Section 2. This ordinance shall be in full force and effect from and after its passage and approval.
PASSED THIS 15th DAY OF August, 1984.
APPROVED THIS 15th DAY OF August, 1984.
 /s/ E.W. Bill Abram
 E.W. (Bill) Abram, Mayor
ATTEST:
/s/ Mary E. Oellermann
Mary E. Oellermann, City Clerk

JUDGMENT
Findings of fact and conclusions of law, dated this day, are hereby incorporated into and made a part of this judgment.
IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that judgment be and the same is entered in favor of defendant City of Bridgeton.
IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that, under the circumstances, plaintiff's requests for an award of attorney's fees pursuant to 42 U.S.C. § 1988 and for hearing thereon be and the same are denied.
NOTES
[1] In relevant part and before the August 15, 1984, amendment, Article VI of defendant's Municipal Code specifically prohibited "billboards" and "[s]ign[s] advertising an article or product not manufactured, assembled, processed, repaired or sold upon the premises upon which the sign is located." Sections 5-138(a) and 5-138(g). See Exhibit A attached hereto and incorporated herein by reference for a complete copy of the old Article VI. The article defined "billboards" as:

[a]ll signs maintained by advertising agencies which advertise products of their customers or clients, and all business signs individually or privately owned which are not on the premises of the owner or place of business to which they apply; including wall signs and those otherwise attached to buildings and structures, as well as those not attached to buildings and supported by uprights or braces on the ground.
Section 5-125.
[2] On August 15, 1984, defendant amended its ordinance to prohibit explicitly, with specified exceptions,

[g]raphics advertising a service not provided or an article or product not manufactured, assembled, processed, prepared or sold upon the premises upon which the graphic is located....
Section 5-132(a) of Ordinance No. 84-54. See Exhibit B attached hereto and incorporated herein by reference for a complete copy of the new ordinance. The present ordinance allows the following:
On the property which it occupies, each activity is entitled to display, on each street and parking lot on which it fronts, street graphics containing a total of items of information up to the maximum designated in Section 5-128. However, if the name of the activity contains more than the maximum number of items of information permitted, such name may be displayed once on each frontage provided no other graphic for that activity is displayed on the building or premises....
Section 5-127(a). The ordinance explicitly exempts from its regulations "[p]olitical signs not over 8 square feet in area that are placed in a Residential District only and that are removed within 10 working days after the date of the election to which they pertain," Section 5-131(e), among other listed signs.
[*] Editor's noteOrd. No. 72-8, adopted Feb. 2, 1972, repealed former Art. VI, §§ 5-1255-159, pertaining to signs, derived from Ord. No. 955, adopted Oct. 18, 1968. Sections 134 of said Ord. No. 72-8, as amended by Ord. No. 72-64, § 1, adopted July 19, 1972, are included herein as a new Art. VI, §§ 5-125-5-158.